IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ALBERT W. MALCOM, )
)
    Plaintiff, )
)
v. ) Civ. No. 12-584-SLR
)
CAROLYN W. COLVIN, Commissioner, )
Social Security Administration, )
)
    Defendant. )

---

Jennifer R. Morrell, Esquire and Thomas J. Reed, Esquire of Veterans Law Clinic, Widener University School of Law, Wilmington, Delaware. Counsel for Plaintiff.

Charles M. Oberly III, Esquire, United States Attorney, District of Delaware, and Heather Benderson, Assistant United States Attorney, District of Delaware, Counsel for Defendant. Of Counsel: Eric P. Kressman, Esquire, Regional Chief Counsel, and Donald K. Neely, Regional Counsel of the Office of General Counsel, Philadelphia, Pennsylvania. Counsel for Defendant.

---

**MEMORANDUM OPINION**

Dated: September 25, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Albert W. Malcom ("plaintiff) appeals from a decision of Carolyn W. Colvin, the Commissioner of Social Security ("defendant"),[1] denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (D.I. 1) Plaintiff has filed a motion for summary judgment asking the court to award DIB or remand for further proceedings. (D.I. 9,10) Defendant has filed a cross-motion for summary judgment, requesting the court to affirm her decision and enter judgment in her favor. (D.I. 12, 13) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).[2]

## II. BACKGROUND

### A. Procedural History

On November 5, 1999, plaintiff applied for DIB alleging disability as of October 22, 1998, the date that a physician at the Veteran's Administration ("VA") diagnosed

---

[1]Carolyn W. Colvin became the Commissioner of Social Security on February 13, 2013, after this proceeding was initially filed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin replaced the previous Commissioner, Michael J. Astrue, as the defendant in this case.

[2]Under § 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .

42 U.S.C. § 405(g).

single vessel coronary artery disease.[3] (D.I. 6 at 107) After the application was denied, both initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). (D.I. 7 at 699)

At the first hearing held on November 9, 2001, the ALJ requested that plaintiff submit to an intelligence test and psychological examination. On February 25, 2002, after review of the record and testing, the ALJ concluded that plaintiff was mildly retarded, but affirmed the denial of disability benefits because plaintiff "had the residual functional capacity to perform simple, routine, repetitive tasks at all exertional levels." (Id. at 700) On April 12, 2002, plaintiff filed a request for a review by the Appeals Council. On August 6, 2004, the Appeals Council remanded the case to the ALJ, after concluding that the ALJ had failed to weigh the state agency's medical opinion and did not resolve the inconsistencies between plaintiff's mental retardation and his past ability to perform semi-skilled work. (Id. at 707)

The ALJ held another hearing on January 31, 2005 to consider plaintiff's claims of disability based on hearing loss, heart condition, shoulder and knee pain and mental disability. The ALJ reviewed the evidence associated with plaintiff's physical problems and found that each did not qualify as disabling. (Id. at 707) With respect to mental disability, the ALJ found no documentation of mental retardation in plaintiff's educational history. The ALJ concluded such a finding was inconsistent with plaintiff's successful completion of helicopter maintenance training received during service in the

---

[3]On February 11, 2000, plaintiff amended his disability onset date to May 24, 1993 to reflect the date that he first filed a claim for VA pension benefits for total disability. (D.I. 6. at 64)

2

United States Army. The ALJ also determined that plaintiff had overstated his functional impairment. On September 23, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision.

Plaintiff initiated an action in this court. *Malcom v. Barnhart*, Civ. No. 05-797-KAJ (D. Del. 2005). On September 15, 2006, The Honorable Kent A. Jordan vacated and remanded the case, finding that the ALJ had not adequately considered or explained the affect of the VA's decision finding him eligible for disability benefits. (D.I. 7 at 697-712) In so doing, the court observed,

> [t]hat is not to say, of course, that another agency's decision is determinative. On the contrary, the United States Court of Appeals for the Third Circuit has noted that 'the determinations of other government or non-government agencies are not binding on social security benefits decisions. . . .
> \*       \*       \*
> Although the VA's determination in plaintiff's case was not that he was totally or permanently disabled, that agency did find him eligible for disability benefits. It is not clear that the VA's decision was considered by the ALJ in this case and therefore the case will be remanded.

(*Id.* at 710-12 (citation omitted)).

In October 2007, the ALJ held another hearing on plaintiff's claims. (*Id.* at 786) Because the Social Security Administration was unable to transcribe the record of the proceeding, a new hearing was held on March 10, 2011, with plaintiff testifying and represented by counsel.[4] (*Id.* at 813-16)

On June 1, 2011, the ALJ denied benefits, finding that plaintiff was capable of performing his past relevant work as a security guard and as a cleaner. (*Id.* at 684-687)

---

[4]The record reflects that plaintiff and his representative appeared at each hearing before an ALJ.

3

Plaintiff appealed the decision to the Appeals Council, which denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* at 6-8) Having exhausted his administrative remedies, plaintiff filed a civil action in this court on May 5, 2012, seeking review of defendant's decision to deny him DIB. (D.I. 1)

### B. Plaintiff's Non-Medical History[5]

Plaintiff was born on January 10, 1948. Plaintiff attended school until eighth grade, when he dropped out to start working. (D.I. 6 at 130; D.I. 7 at 540, 573-74, 598-99) Plaintiff was enrolled in regular classes, was able to read and write, and maintained a C average. (D.I. 6 at 130; D.I. 7 at 540) After dropping out of school, plaintiff trained as a handyman with a construction company, learning carpentry, plumbing and electrical skills. (D.I. 7 at 599-600) At age 18 or 19, plaintiff was drafted into the Army in 1967. (D.I. 7 at 701)

### C. Plaintiff's Military Service

Plaintiff served in the Army from July 6, 1967 to June 2, 1969. (D.I. 6 at 278) A pre-induction physical examination noted no defects aside from prescription

---

[5]As noted by the court in September 2006, "one of the chief challenges of this case has been plaintiff's shifting story." (D.I. 7 at 700) The court also recognized problems with plaintiff's credibility:
> [Plaintiff] has previously been found less than credible by those charged with reviewing his claims for governmental benefits. Besides the ALJ in this case, who found 'the allegations made are less than fully credible,' the Board of Veterans' Appeals concluded that [plaintiff's] reasons for claiming dental benefits from the VA were 'implausible' and lacked any competent evidentiary support.

(*Id.* at 703, fn.3 (citations omitted)) Similar problems exist in the record at bar and are identified accordingly. Some inconsistencies may be attributable to memory lapses, given the number of years that have passed and the very narrow time frame at issue, May 2, 1993 (alleged DIB onset date) to March 31, 1996 (plaintiff's last date insured).

4

eyeglasses. (*Id.* at 298-301) He was disqualified from flight duty due to poor eyesight. (*Id.* at 304-06) Plaintiff attended helicopter mechanic school at Ft. Rucker, Alabama and was transferred to the 190th Assault Helicopter Company stationed in Bien Hoah, Vietnam. (*Id.* at 326, 130)

Plaintiff told the ALJ that he was trained in aircraft maintenance until he was sent to Vietnam, where he worked in and drove cars in a motor pool. (D.I. 7 at 601-602) VA records reflect that plaintiff worked as a mechanic while stationed in Vietnam. (D.I. 6 at 233, 262)

In February 1969, plaintiff was injured while repairing a damaged building. (D.I. 6 at 398-99) Another serviceman, standing on a roof, dropped a hammer, striking the right side of plaintiff's head and mouth. Plaintiff was knocked unconscious. He was treated at the scene and returned to work. As a result, he sustained damage to his teeth.

### D. Plaintiff's Civilian Employment History

After discharge from the Army, plaintiff worked at Chrysler as a spray painter in the finishing department from 1969 to 1975. (D.I. 7 at 602) From 1975 to 1979, plaintiff was a security guard at a college campus. (D.I. 6 at 133, 136) From 1985 to 1989, plaintiff worked as a tow truck driver for A-1 Auto Salvage.[6] (D.I. 6 at 71, 112-117) From 1989 to 1991, plaintiff was employed as a part-time and full-time janitor by a temporary employee agency. (*Id.* at 134)

---

[6]Plaintiff claims to have worked for A-1 for about 18 years; however, earning records reflect that he had no earnings between 1980-1984 and sporadic earnings between 1985-1991. (D.I. 6 at 7)

5

### E. Plaintiff's VA Claims

In 1993, plaintiff initiated a claim for service-connected disability compensation for head injury, dental trauma (broken teeth), hearing loss and knee problems. (D.I. 6 at 240) The Wilmington VA Regional Office ("VARO") granted plaintiff 0% service connection for bilateral hearing loss. The VA hearing officer held that plaintiff's hearing impairment was not compensable because it caused "little or no functional impairment." (Id. at 240) Plaintiff was denied service-connected disability for the head injury and dental trauma because plaintiff's Army records did not show that he was treated for any such injury. (Id. at 377-78)

Plaintiff appealed the decision. In 1996, the Board of VA remanded the case to VARO to determine whether plaintiff had enlisted in the Army Reserves. (Id. at 271-74)

Plaintiff was awarded non-service-connected pension benefits from the VA on August 21, 1997. (D.I. 6 at 453) The VA found plaintiff had no single disability or combination of disabilities that met the required percent disability threshold, but awarded permanent disability benefits based on a combination of other factors, including age, education and occupational background. Plaintiff's pension award was backdated to the date he filed his claim in 1993, and he has received a VA disability pension since 1997.

### F. Plaintiff's Medical History

The record reflects that plaintiff began to seek treatment at the VA in 1993, notably for shoulder and arm pain. The record does not include medical records prior

6

to that time as plaintiff did not have a treating physician and did not receive regular care from 1969 to 1993.

In April 1993, plaintiff sought emergency treatment at the Medical Center of Delaware for severe pain in his right knee. (D.I. 6 at 375) He was prescribed a knee brace and physical therapy.

On October 23, 1993, Dr. Thomas at the VA Wilmington Medical Center diagnosed plaintiff with bilateral hearing impairment and a perforated left ear drum. (Id. at 246-48) An audiology test showed that plaintiff had "a significant high frequency sensorineural type hearing loss in each ear." (Id. at 369)

On November 15, 1996, an esophageal barium X-ray revealed a "suspicious sliding hiatel hernia without reflux." (D.I. 6 at 221) The record does not reflect any treatment for this condition or additional testing.

During an August 1997 examination for a Compensation and Pension Exam Report, the presence of a hiatal hernia and GERD[7] were noted. (D.I. 6 at 184-86) His blood pressure was recorded at 140/80. (Id. at 185) Plaintiff stated that he smoked a pack of cigarettes a day. Dr. Charles Mauriello observed the presence of a "suspicious degenerative change at the greater tuberosity of right humerus." (Id.) In post examination notes, Dr. Mauriello diagnosed:

> (1) Rotator cuff attrition involving both shoulders with arthrofibrosis in the right.
> (2) Chronic right bicipital tendinitis.
> (3) Mild adhesive capsulitis/arthrofibrosis, both shoulders as described.
> (4) Consider right suprascapular nerve entrapment and/or right carpal tunnel syndrome, based on clinical findings.

---

[7]Gastro-esophageal reflux disease.

(D.I. 6 at 470) Dr. Maureillo further opined that, based on his examination and plaintiff's history, there would be a functional problem with the right shoulder which would result in "lack of endurance, lack of strength, weakness, and fatiguability, which will result in decreased range of motion." (*Id.*)

On November 14, 1997, plaintiff had two chest X-rays taken. (D.I. 6 at 222) The x-rays showed an abnormal and irregular density in his left lower lung that required immediate attention. (*Id.*) The records do not reflect that plaintiff received any follow-up care.

In June 1998, plaintiff sought treatment for chest pains at the VA Medical Center Wilmington emergency room. In October 1998, plaintiff had a cardiac catherization performed at the VA Medical Center, Baltimore, Maryland. The surgery revealed that plaintiff's left anterior descending artery was 100% occluded. (*Id.* at 172-76, 158-66) Plaintiff's surgeons decided not to try to open the blocked artery, instead electing conservative treatment with medication. Plaintiff was subsequently discharged with medication and instructions to stop smoking cigarettes and drinking alcohol. (*Id.* at 158-66, 172-175)

In February 2000, Dr. Stephen J. Rodgers, M.D., examined plaintiff's records and prepared a report for submission with materials filed in support of his social security claim. (*Id.* at 232) Dr. Rodgers was not a treating physician. Dr. Rodgers opined that plaintiff had been disabled from any type of gainful employment since 1991. Dr. Rodgers stated that plaintiff "is presently and has been totally and permanently disabled and unable to perform any type of gainful employment" due to a condition that began in

8

1991. There is no explanation or additional discussion supporting this summary conclusion. (*Id.* at 237)

Medical records reflect that in August 2000, plaintiff had no acute health complaints. (D.I. 7 at 535) A file notation indicates that plaintiff was missing his Lipitor medication two days a week and not following a low-fat diet.

Progress notes dated February 23, 2001, reflect that as part of his arrest and conviction for DUI, plaintiff was ordered to attend therapy sessions for approximately 15 weeks. (D.I. 6 at 487) In therapy, plaintiff rated his health as "good." (D.I. 7 at 510) A medical progress report dated March 30, 2001, describes plaintiff's cardiac condition as stable. (D.I. 6 at 486)

In October 2001, a social worker evaluated plaintiff to determine whether he suffered from Post Traumatic Stress Disorder ("PTSD"). (D.I. 7 at 538) The progress notes suggest that plaintiff sought the PTSD evaluation as part of his efforts to obtain a monetary increase in his dental claim. The social worker concluded that plaintiff had mild symptoms of PTSD, but that "these symptoms do not appear to affect relationship with others and did not appear to negatively impact on previous employment." (*Id.* at 541)

In February 2002, at the request of the ALJ, Dr. S.M. Iqbal, PhD examined plaintiff for a consultative psychological evaluation. (D.I. 7 at 544) After administering a series of tests and examining plaintiff, Dr. Iqbal concluded that plaintiff was functioning in a mild mental retardation range. (*Id.* at 548-49) Plaintiff's IQ score on the Wechsler III test was 64. (*Id.* at 547) Although plaintiff's memory was in the defective range, Dr. Iqbal reported that plaintiff was able to understand and carry out simple instructions.

9

(*Id.* at 549) Dr. Iqbal further concluded that, at the time, plaintiff was not showing any mental or physical symptoms which would preclude him from the kind of work he was doing, unskilled labor.

Dr. Iqbal noted that plaintiff said he was seeking disability in order to relax and live life and that plaintiff "wants to get all the benefits from all the agencies." (D.I. 7 at 547) Plaintiff told Dr. Iqbal that, if he were to work, then he would lose his VA pension, as well as other benefits. (*Id.* at 544-552) Dr. Iqbal concluded that plaintiff was unmotivated to work. He found him street-wise and capable of making rationale decisions.

In January 2007, plaintiff was examined by Dr. David Shulkin, M.D., a non-treating physician who reviewed the record without examining plaintiff. (D.I. 7 at 772) Dr. Shulkin opined:

> In this review [of plaintiff's medical records], I have noted that he had a fully occluded coronary artery (LAD) in October of 1998. Given this level of hypercholesterolemia and the chronicity of this finding, it is my opinion, within a reasonable degree of medical certainty, that he had significant coronary artery disease in March of 1996. It should be noted that the coronary artery disease was not symptomatic at the time, however it is certain that the condition and pathology was present at that time. He did not receive diagnostic evaluation for his heart condition until 1997.
>
> Plaintiff last worked in 1991. At that time he had left employment as a janitor 3 days per week. He had numerous complaints of joint pain (shoulder, knee and back) and had limited mental capabilities (borderline mental retardation). While I cannot say with medical certainty that he was unable to hold any employment after 1991, the evidence is suggestive that such employment would have been difficult.

(*Id.* at 776-75)

Dr. John Dettwyler, Ph.D. examined and conducted testing on plaintiff, at the request of his counsel on February 6, 2007. (*Id.* at 777) Dr. Dettwyler administered tests to determine plaintiff's cognitive and intellectual ability, and reviewed his extensive medical history. (*Id.* at 778) Dr. Dettwyler concluded that plaintiff possessed an "intellectual capacity at the .9 percentile, and with the mild range of mental retardation." (*Id.* at 781) He averred that it was "highly unlikely" that plaintiff's intellectual defects could have developed after 1996, unless he had received some traumatic or global brain injury. Rather, Dr. Dettwyler surmised that his "current intellectual deficits have existed since birth, notwithstanding the possibility of an acquired loss of spatial reasoning skills as a product of the reported head injury." (*Id.* at 781) He computed plaintiff's IQ at 61, placing him in the mild range of intellectual impairment. (*Id.* at 782)

### G. Hearing Before the ALJ

At his March 10, 2011 hearing, plaintiff testified that in 1996 he had difficulty walking due to arthritis in his legs and arms. (D.I. 7 at 961) Although he was able to drive a truck for work, it was difficult and strenuous to do so. Plaintiff stated that he had difficulty reading, writing and doing arithmetic. (*Id.* at 963) His girlfriend took care of the household finances. While at one point, he said he did all of the laundry, cooking, grocery shopping and cleaning of the home, he later stated that his girlfriend did all of those chores. (*Id.* at 964-65)

Vocational Expert Jan Howard-Reed testified that plaintiff's past work as a security guard would be considered light and unskilled work. (*Id.* at 986) She said his past work as a cleaner would be considered heavy and unskilled.

11

## III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive if they are supported by substantial evidence. Accordingly, judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. See id. In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. See id. at 1190–91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the

governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51, (1986) (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." See Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir.1986) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir.1990).

## IV. DISCUSSION

### A. Regulatory Framework

Social Security Administration regulations incorporate a sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the ALJ considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is

whether, based on the medical evidence, the impairment meets the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1 (1999), which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the ALJ assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform her past work, then step five is to determine whether there is other work in the national economy that the claimant can perform. *Sykes v. Apfel*, 228 F.3d 259, 262–63 (3d Cir.2000) (citing 20 C.F.R. § 404.1520). If the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed to the next step. 20 C.F.R. § 404.1520(a). It is within the ALJ's sole discretion to determine whether an individual is disabled or "unable to work" under the statutory definition. 20 C.F.R. § 404.1527(e)(1).

The ALJ is required to evaluate all of the medical findings and other evidence that supports a physician's statement that an individual is disabled. The opinion of a treating or primary physician is generally given controlling weight when evaluating the nature and severity of an individual's impairments. However, no special significance is given to the source of an opinion on other issues which are reserved to the ALJ, such as the ultimate determination of disablement. 20 C.F.R. §§ 404.1527(e)(2) & 404.1527(e)(3). The ALJ has the discretion to weigh any conflicting evidence in the case record and make a determination. 20 C.F.R. §§ 404.1527(c)(2).

**B. The ALJ's Decision**

14

The ALJ considered the medical evidence of record and the testimony received at the hearing, and concluded that plaintiff was capable of performing his past relevant work as a security guard and as a cleaner. The ALJ made the following enumerated findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 1996.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 2, 1993 through his date last insured of March 31, 1996 (20 C.F.R. 404.1571 et seq.).
>
> 3. Through the date last insured, the claimant had the following severe impairment: Borderline intellectual functioning (20 C.F.R. 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but was limited to simple, unskilled work.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a security guard and cleaner. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 2, 1993, the alleged onset date, through March 31, 1996, the date last insured (20 C.F.R. 404.1520(f)).

(D.I. 7 at 679-87)

### C. Analysis

#### 1. Impairments

15

Plaintiff contends that the ALJ's decision is not based on substantial evidence because his borderline intellectual functioning, along with additional minor impairments, preclude plaintiff from working. He further asserts that the ALJ improperly discounted the medical opinions presented and incorrectly evaluated plaintiff's credibility with respect to subjective complaints of pain.

Having considered the record against the ALJ's decision in light of the authority cited above, the court finds that the ALJ's decision is supported by substantial evidence of record. Significantly, in this regard, the focus of the time period at issue is very limited, i.e., May 2, 1993 (alleged disability onset date) to March 31, 1996 (plaintiff's date last insured). The contemporaneous records related to this time detail plaintiff's problems with his knees and hearing. For the knee problem, a brace was ordered but no medication was prescribed or any further treatment noted. With respect to the hearing problem, an audiology evaluation was performed and found little or no functional impairment. The record simply does not support a finding that the knee or hearing problems functionally limited plaintiff's life or work.

With regard to plaintiff's mental impairment, the record reflects that he was not enrolled in special education classes, completed Army specialized training for helicopter maintenance, and had a long work history without any recorded problems due to mental deficits.

With respect to Dr. Rogers' report, the ALJ concluded that there were no reasons provided for his opinion that plaintiff had been disabled since 1991. The ALJ correctly observed that Dr. Rogers did not examine or treat plaintiff and relied on medical findings that reference treatment subsequent to the date last insured, March

16

31, 1996. The ALJ's decision to give little significant weight to Dr. Shulkin's finding - that employment would have been difficult because of plaintiff's cardiovascular problems - is supported by the record. Dr. Shulkin was not a treating physician and did not express his opinion with any medical certainty. The record evinces that the ALJ specifically set forth his reasons for discounting the medical opinions and did not substitute his own non-medical opinion.

### 2. Subjective complaints of pain

The Third Circuit has instructed that, although "[t]estimony of subjective pain and inability to perform even light work is entitled to great weight," *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979), an ALJ may reject a claim of disabling pain where he "consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record." *Matullo v. Bowen,* 926 F.2d 240, 245 (3d Cir.1990). Put another way, the ALJ must give plaintiff's subjective complaints "serious consideration" and make "specific findings of fact, including credibility, as to [his] residual functional capacity." *See Burns v. Barnhart,* 312 F.3d 113, 129 (Fed. Cir.2002) (citations omitted).

Although subjective complaints of pain must be given serious consideration, "pain alone cannot be the basis for a finding of disability; the subjective complaints must be accompanied by medical evidence showing the existence of a condition that reasonably could be expected to produce the alleged symptomalogy and support a finding of disability. It is [plaintiff's] burden to prove that [his] subjective complaints of pain are substantiated by medical evidence." *See Alward v. Comm'r of Social Sec'y,*

17

Civ. No. 08–3373, 2009 WL 4798263, *7 (D.N.J. Dec. 8, 2009) (citations omitted). The language of the opinion demonstrates that the ALJ in this case thoroughly evaluated plaintiff's subjective complaints against his medical records and provided sufficient explanation for rejecting those complaints.[8]

The record establishes that plaintiff's impairments could reasonably be expected to cause the symptoms asserted. Nevertheless, the ALJ's finding that plaintiff's statements about the intensity of the problems was not credible is supported by the record. With respect to his back and shoulder pain, there is no evidence of treatment during the relevant time period. Similarly, there is no evidence of treatment for the knee pain, beyond 1993. As noted above, there are inconsistencies between plaintiff's statements and the documentation of record. The ALJ aptly evaluated the differences with specificity and assessed credibility appropriately.

### 3. Remand to consider the decision of the VA

Plaintiff asserts that the ALJ did not comply with Judge Jordan's remand order to consider and explain the findings and affects of the VA's award of partial disability. The court finds that the ALJ specifically addressed, analyzed and rejected the VA's decision due to the different statutory standards of review, nonbinding effect on the ALJ, disparate time periods at issue, and evidence of record clearly supporting the conclusion that plaintiff was not disabled. Notably, the VA decision and record are vague and fail to explain the reasons for the award of disability. For example, the VA

---

[8]To the extent plaintiff suggests that the ALJ erred in evaluating his credibility, the court finds nothing in the record to disturb the ordinary deference afforded an ALJ's credibility determinations. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

found no single disability or combination of disability within the range required; rather the award was due to the "level of disability and other factors, such as the veteran's age, education and occupational background." (D.I. 6 at 453) Without a description of "other factors," the court finds that the ALJ's analysis satisfies the directive of the remand.

## V. CONCLUSION

For the reasons stated, the court finds that the ALJ's decision was supported by substantial evidence of record. Plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. Judgment shall be entered in favor of defendant. An appropriate order shall issue.